\*JERRY WILLIAMS V. STATE.

1. DEFECTS IN SHERIFF'S VENIRE IN HOMICIDE CASE ONLY REVIEWABLE WHEN OF RECORD.

Irregularities not appearing in a sheriff's venire and returns requiring proof outside the record cannot be considered by the circuit court on review. Hence, a verdict of conviction will not be set aside upon the ground that a true copy of the panel as returned by the sheriff was not delivered to accused as required by Rev. Stat. 7273 (Lan. 11027), where the irregularity complained of is brought to the attention of the court by an affidavit to which is attached a paper writing purporting to be a copy of such panel but which is not contained in the bill of exceptions.

2. MERE OBJECTION TO MENTAL COMPETENCY DOES NOT REQUIRE IMMEDIATE INQUISITION.

Mental incompetency of a witness being suggested does not require the court to stop the trial and institute an inquisition as to his mental capacity immediately upon mere objection to his testimony therefor.

3. MISCONDUCT OF PROSECUTING ATTORNEY DENIED.

A prosecuting attorney is not guilty of misconduct in his closing argument to the jury in a homicide case in commenting on a billy or "black jack" introduced in evidence and quoting from a witness, "That black jack could tell the story." If adding the statement, that the accused also could tell, was prejudicial it was corrected by the court, upon objection of accused's counsel, stopping him, insisting that it was not proper and that it should not be repeated.

4. TESTIMONY OF ACCUSED BEFORE GRAND JURY COMPETENT.

Testimony of one accused of homicide before a grand jury, denying that he was guilty but he knew how the murder was committed and other incriminatory statements, was properly admitted on his trial for the homicide as admissions showing guilty knowledge of the perpetration of the crime.

5. EVIDENCE BY DEATH BY VIOLENT MEANS ESTABLISHED.

Evidence that deceased disappeared March 17, 1904, his body was found April 2, following, with the head covered with contused wounds, the skin torn from the knees or abraded and marks on his throat, and testimony of reputable physicians that death was caused by suffocation, if not establishing the fact beyond reasonable doubt that he was violently dealt with, reasonably brings to the jury that violence was employed and that there were strong probabilities that some person was guilty of the offense and outweighs the idea of accident.

[Syllabus approved by the court.]

ERROR to Morrow common pleas court.

**J. W. Barry** and **W. F. Bruce,** for plaintiff in error.

**T. B. Mateer** and **Word,** for defendant in error:

---

\*Leave to file petition in error refused by the Supreme Court, January 21, 1908; 53 Bull. 28.

Williams v. State.

Cited and commented upon the following authorities: *Henning* v. *Bartz*, 25 O. C. C. 15; *Goyert* v. *Eicher*, 70 Ohio St. 30 [70 N. E. Rep. 511]; *McHugh* v. *State*, 42 Ohio St. 154; *Kent* v. *State*, 42 Ohio St. 426; *Hartnett* v. *State*, 42 Ohio St. 568; *Davis* v. *State*, 25 Ohio St. 369; *Calkins* v. *State*, 18 Ohio St. 366 [98 Am. Dec. 121]; *McGuire* v. *State*, 2 Circ. Dec. 318 (3 R. 551); *Gawn* v. *State*, 7 Circ. Dec. 19 (13 R. 116); *Schneider* v. *State*, 1 Circ. Dec. 565 (2 R. 420); *Lindsey* v. *State*, 69 Ohio St. 215 [69 N. E. Rep. 126]; *Brown* v. *State*, 18 Ohio St. 496

## TAGGART, J.

At the April term, 1907, of the court of common pleas Jerry Williams was indicted for murder in the first degree by a grand jury of Morrow county.

To the indictment he filed a motion to quash and also a demurrer. This motion and demurrer were overruled by the court.

He was placed upon trial and a verdict of "guilty" was returned "of murder in the second degree." A motion for a new trial was filed and overruled; he was sentenced under the law. Thereupon proceedings in error were prosecuted in this court, incorporating all the errors that it is alleged intervened from the time of the indictment to the sentence of the defendant by the court of common pleas.

In respect to the motion to quash, and the demurrer to the indictment; we think the court of common pleas committed no error in overruling them.

The next error to which our attention has been called, is a motion to quash the service of the panel, as it is designated, and the motion is somewhat extensive and the following is a part:

"Now comes the defendant, Jerry Williams, in his own proper person, and objects to the panel of petit jurors, drawn June 3, 1907, and June 8, 1907, and returned by the sheriff of Morrow county, Ohio, to try the above entitled cause, for the following reasons, to wit:

"1. Because of the failure of the sheriff, or proper officer, to comply with Rev. Stat. 7273 (Lan. 11027), which said section of the statute reads as follows:

" 'A copy of the panel of the jury returned by the sheriff shall be delivered to every person so indicted, at least three days before the day of trial.'

"That no copy of said panel, as returned by the sheriff, has been delivered to this defendant, Jerry Williams.

"That all the paper writing purporting to be a copy, is hereto attached and made a part of this motion.

Morrow County.

"2. Because the return of the sheriff does not show that all of the jurors named in the first special venire, were served by him to appear as jurors to try the above entitled case.

"3. Because the clerk was not authorized by said return, to cause a special *alias venire facias* to be issued.

"4. Because the clerk drew the special *alias venire facias* in the absence of the court.

"5. Because the record does not show that the special *alias venire facias* was drawn in the presence of the court.

"6. Because the endorsement by the sheriff upon said special venire, 'Not Found,' is not a sufficient return by the sheriff, to show that juror is not within the county of Morrow, and state of Ohio. 'Wherefore said defendant prays that said panel may be quashed.' " Then follows an affidavit:

"The State of Ohio, Morrow County, ss. Jerry Williams being duly sworn according to law, says, that the paper writing hereto attached and made a part of this motion, is the paper writing served upon him, purporting to have been served by the sheriff; and that the same is the only paper writing served upon him by the sheriff, or by any other person, and that the said Jerry Williams is now an inmate of the county jail and has been confined therein since long before the return of the indictment in this case by the grand jury of Morrow county, Ohio, against said defendant at the April term of this court, to wit: April —, 1907. (Signed.) Jerry Williams. Subscribed in my presence and sworn to before me this twenty-fifth day of June, 1907. (Signed.)   C. R. Meredith, Clerk of Courts."

So far as this motion purports to set out any irregularities that appear in the sheriff's venire and returns, we can consider them. Such as are required to be shown outside of the venire, by proof, we cannot consider. Looking into the matters that are raised on this motion that appears from the venire and return of the sheriff and from the transcript in this case, we think that the clerk and sheriff have fully complied with the law. The only matter that appears outside of the record and that is attacked by the plaintiff in error, is, "That a true copy of the panel as returned by the sheriff, was not delivered to him;" and this appears by the affidavit and a copy of the papers attached to the motion.

It may be said in respect to that matter, that this does not bring the matter into the record at all, neither is it in a condition that we can consider it for the reason: There is attached to this motion an affidavit by Jerry Williams, but we do not know that the court acted upon

Williams v. State.

that affidavit alone, or what evidence the court acted upon in overruling this motion; all that appears in this transcript is the overruling the motion.

In order that it may be brought to the attention of the reviewing court, this affidavit and all the affidavits that the court heard must be brought into the bill of exceptions, with the certificate, that that was all the evidence that was heard by the court, at the hearing of the motion.

In *Henning* v. *Bartz,* 25 O. C. C. 15, 16, the circuit court of Wood county thus announced the law:

"A reviewing court cannot take notice of affidavits offered on a motion for a new trial, unless they are incorporated in a bill of exceptions."

In the case of *Brock* v. *State,* 12 Circ. Dec. 467, 468 (22 R. 364), the circuit court of Hamilton county, thus lays down the rule:

"These facts are only supplied by the affidavit of the county prosecutor made after the accused had been tried and found guilty. In the first place, an affidavit is no part of the record, and is not made such even though copied verbatim by the clerk into the record. An affidavit can only become part of the record by being incorporated in a bill of exceptions."

The Supreme Court in *Goyert* v. *Eicher,* 70 Ohio St. 30 [70 N. E. Rep. 511], thus lays down the rule:

"An agreed statement of facts, although in writing, signed by counsel of all parties and filed, does not become a part of the record unless brought upon the record by a bill of exceptions, or the facts as agreed upon are stated in the journal entry as the court's finding of facts." And cites with approval, *Wells* v. *Martin,* 1 Ohio St. 386, and particularly *Busby* v. *Finn,* 1 Ohio St. 409; also *Lake Erie & W. Ry.* v. *Mackey,* 53 Ohio St. 370, 380 [41 N. E. Rep. 980; 29 L. R. A. 757; 53 Am. St. Rep. 640], but this is clearly the rulings of the different courts. So far, then, as to any matters outside of the record, they are not before us and we cannot pass upon them, but from what appears in the record we think there was no error in the court overruling this motion to quash the service of the panel and this exception is not well taken.

It is claimed the court erred in the trial of the case, in refusing to hear evidence as to the mental condition of one Herbert Glenn.

Glenn is jointly indicted for this crime; when he was called as a witness, objection was made that he was not mentally competent and

it is urged that the court was in error in not hearing testimony as to his mental condition before admitting him as a witness.

Our attention is called to Whittaker's Code of Evidence and other authorities. Where a person of tender years is brought into court, the court can see and it is his duty to ascertain whether the child has such knowledge of the responsibility and nature of an oath, the proper appreciation of the relation of things, that it can state truthfully and relate correctly what it has heard and seen.

Assuming that that would be the same rule with respect to one that was of weak mind (which we do not by any means announce as the opinion of the court), but assuming that, (in this case the witness was introduced, the court could see him; he heard him testify and the motion was again renewed at the close of his testimony) it would be a strange procedure that, on an objection to a witness that is tendered, the trial court would have to stop the trial to test the mental capacity of the witness. We do not think that such is the law of the case.

If the examination in chief, or the cross-examination even, tended to bring to the attention of the trial judge, that there was such mental infirmity, it would have been his duty to have taken care of it in the proper way; if it was disclosed that the person was of unsound mind and mentally weak, he should have then withdrawn the testimony from the jury. But from a careful examination of this record, we think there was no prejudice in this case as to the competency of this man on the ground of lack of mental capacity, for the manner in which this record discloses that he had detailed facts and circumstances, and the manner in which he underwent the close, careful, rigid cross-examination of counsel, would indicate that he was at least possessed of the ordinary degree of mentality. We cannot hold to the idea, that on a mere objection, that the court was compelled to institute on the side an inquisition as to the mentality of the witness. We think that is not the practice and not the rule. Therefore we hold the court was not in error so far as that objection is concerned, in admitting him as a witness in the case.

The next objection urged upon us is, the misconduct of the prosecuting attorney. There was introduced in the case a "billy" or "black jack" as it is sometimes called, and the prosecuting attorney in the argument of the case, comments on some testimony in the case, which would justify the remark: "That black jack could tell the story." A certain witness had so stated; he repeated that; that was perfectly proper. He adds, however: "So could Jerry Williams;"

thereupon the court very promptly, upon objection of counsel, stopped him, insisted that it was not proper and that it should not be repeated. Now the court in that instance did all that he could do to correct whatever wrong there was in the action of the prosecuting attorney. And even assuming that the statement, "So could Jerry Williams;" assuming that it was improper, it was corrected and no prejudicial error intervened, in our judgment.

It is urged upon us that the admission of the testimony of Jerry Williams before the grand jury at the January term, admitted at the trial, was erroneous and prejudicial. An examination of this record will show that when it was proposed to introduce the evidence of Jerry Williams taken before the grand jury, it was objected to as being incompetent, because no cross-examination had been made, and no opportunity given for cross-examination. We think that this was entirely competent, upon the well-established rule, that the admission, declaration, or statement of any party on trial made at different times or places is perfectly competent to be introduced against him.

These statements were introduced as substantive testimony, that he had guilty knowledge of the perpetration of this crime. He so testified before the grand jury, that he knew how this crime was committed. Although there was some self-serving declarations, yet there was also incriminatory statements which were perfectly proper as substantive testimony. Besides, this could not be prejudicial. Williams did not take the witness stand, but the admission of this testimony placed before the jury the fact that he did not commit the crime; by the introduction of these statements there was brought before them his sworn testimony that he was not guilty, without subjecting him to a cross-examination and the effect of this testimony was to create a doubt in the minds of the jury as to his guilt.

But it is urged upon us that the defendant was not properly convicted of this offense; that the verdict was against the evidence and against the law of the case.

To determine whether this verdict was merited by the evidence produced, there are a few things that we can assume as proven beyond all peradventure.

Shadrick Westbrook disappeared on March 17, 1904; was found perhaps on the second day of April thereafter, dead; there is no dispute about that fact. There can be no dispute as to the condition of the body at that time; that the head was covered with certain contused wounds, that the skin of the knees was torn off or abraded. There

were also marks on his throat. We need not enumerate them all in detail.

The first question that would address itself to the triers of the cause would be, was this a homicide or was it an accident that resulted in the death of the deceased?

We have the testimony of reputable physicians introduced in the case, to say that he came to his death by suffocation. Whether this testimony, beyond a reasonable doubt, establishes the fact that he was violently dealt with or not, we may assume that it reasonably brings to the jury that there was violence employed and there were strong probabilities that some person was guilty of the commission of the offense. We think it outweighs the idea of an accident at least.

There are other facts connected with this case which strengthen that very reasonable position. Shortly after his disappearance, certain persons begin to tell the story, that Westbrook was murdered, and that one Peck was guilty of the crime. The only persons who would have any motive in telling such a story, would be somebody that was interested in his disappearance, or connected therewith.

There has been introduced in the case the testimony of one, Herbert Glenn, and let us see whether we can find any testimony outside of him which tends to establish and strengthen the idea that there was a homicide and not an accidental killing.

The defendant, Jerry Williams, in the workhouse and in the grand jury room says, that one, Sherman Peck, committed this crime. There you have the plaintiff in error, bringing to the attention of the jury that it was not an accident, but that it was a homicide. We have that from his declarations on several occasions—that the disappearance of Westbrook was not accidental; it was purposely and willfully caused.

Next, after looking to the evidence tending to establish that it was a homicide and not an accident, it becomes necessary to look to see whether we can ascertain the guilty agent. The only persons that would have an interest in making any statement in regard to this, were those that were connected with it.

We have said nothing thus far about Herbert Glenn, but the person, Jerry Williams, who says that this was a homicide and not an accident, shortly after the disappearance of Westbrook, himself disappears. Now flight and concealment, unless properly explained, is an evidence of guilt; so that in connection with the fact of his stating that it was a homicide, we have his disappearance and his accusation of Peck. He would be interested in diverting suspicion from himself; he therefore says that it was Sherman Peck who committed this offense.

Williams v. State.

He was a witness before the grand jury; and in the presence of Herbert Glenn and other witnesses, calls attention to the fact that Herbert Glenn could corroborate what he knew about it, that Sherman Peck was the guilty party. They are in the prosecutor's office, they tell the same story, they go before the grand jury and Sherman Peck is indicted. But Sherman Peck was never tried and it is said now that the proof of Sherman Peck's innocence was beyond controversy; assuming that to be true, then you have this plaintiff in error in conjunction with Herbert Glenn, placing the crime, telling the same story upon Sherman Peck, which might send him to the chair. That being so, we reach the next step, that they have some connection with the crime, that they would not have any purpose in diverting suspicion from themselves on someone else, unless they were connected with it.

Later Herbert Glenn tells the story as given on the trial; a story similar in its details with that told before, and as told by Jerry Williams, except that instead of Peck committing the crime, that he and Williams and one Mauck committed this offense.

It is said we are to give no credence to the story of Herbert Glenn. But we call attention to the testimony of the witnesses who heard Glenn and Williams talk in the jail. Williams says: My wife will not say anything that will send me for life, or something in substance of that kind. He says other things there. Glenn testifies on the trial that they took the body of Westbrook to Williams' home and sought admission, which was refused by Williams' wife.

It is urged upon our attention that there is no corroborative testimony of Glenn here. We think that he is corroborated throughout on very substantial details. True, it is said that he manufactured this case after he learned all the facts about it. He could not have manufactured it, as he detailed it on the trial, without having run counter to Williams, and the greatest corroborative testimony that we find in this record, is Jerry Williams himself, and the facts and circumstances which this record contains.

We think that this verdict is amply sustained by the evidence. We think that it is not against the law of the case, but the plaintiff in error was fairly tried by the court of common pleas, and the verdict of the jury was right and there is no error in this case to the prejudice of the plaintiff in error.

Finding no error in this record of prejudice. the judgment of the court of common pleas will be affirmed, with costs, and remanded.

**Donahue** and **Craine, JJ.,** concur.